UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Peter Gibbs and
Brett (Brooke) Sonia

    v.                                        Civil No. 20-cv-1113-LM
                                                      Opinion No. 2021 DNH 133 P

N.H. Department of Corrections
Commissioner Helen Hanks et al.[1]

**O R D E R**

New Hampshire Department of Corrections ("NHDOC") inmates Peter Gibbs and Brett (Brooke) Sonia (a transgender woman) filed this action in November 2020, asserting federal civil rights claims relating to their confinement in a correctional facility in the State of Washington. Before the court is their jointly-filed motion for a preliminary injunction (doc. no. 2).

**Background**

Mr. Gibbs and Ms. Sonia have filed this action asserting claims relating to the conditions of their confinement at the Airway Heights Correctional Center ("AHCC") in Washington, where they had both been transferred to serve a portion of their New Hampshire sentences, pursuant to the Interstate Corrections Compact ("ICC") agreement executed by both states.[2] The ICC generally makes it the responsibility of the administration of the institution in the receiving

---

[1] The defendants named by both plaintiffs in their initial pleadings (doc. nos. 1, 2) are NHDOC Commissioner Helen Hanks, NHDOC Assistant Commissioner Christopher Kench, and NHDOC Director of Medical and Forensic Services Paula Mattis (collectively, "NHDOC defendants"). In addition, in complaint addenda, N.H. State Prison Warden Michelle Edmark is named as a defendant.

[2] The ICC agreement signed by prison officials of the States of Washington and New Hampshire in April 2003 is part of this court's record. See Doc. No. 4, at 39-49.

state to provide for the safe confinement, care, and treatment of inmates from the sending state. See Doc. No. 4, at 42.

Plaintiffs allege that AHCC officers have not adequately provided for their safety and physical and mental health, and that AHCC agents have interfered with their mail and access to the courts. Plaintiffs, who have not named any AHCC officers or agents as defendants in this action, claim that in transferring them out of state without monitoring the care they receive, and in failing to review or respond to their grievances about the conditions at the AHCC, the NHDOC defendants are liable for the violations of plaintiffs' federal rights, which plaintiffs allege have occurred at the AHCC.

In their original complaint (doc. no. 1), signed only by Mr. Gibbs, plaintiffs demanded damages, costs, and injunctive relief, including an order directing that Mr. Gibbs be transferred back to New Hampshire. In their motion for a preliminary injunction, signed by both Mr. Gibbs and Ms. Sonia, plaintiffs specifically seek injunctions: (1) protecting them from retaliation for filing this lawsuit; (2) prohibiting AHCC officers from tampering with their mail; (3) prohibiting AHCC employees from impeding their access to the courts; (4) requiring AHCC employees to deliver a package addressed to Mr. Gibbs that was delivered to the AHCC in September 2020, but which Mr. Gibbs did not receive; and (5) mandating that Mr. Gibbs and Ms. Sonia be allowed to file electronically here and in other courts where electronic filing is required.

The claims set forth in Document Nos. 1 and 2 are claims upon which both plaintiffs base their motion for a preliminary injunction (doc. no. 2). For purposes of deciding the instant request for preliminary injunctive relief, the court summarizes and numbers those claims as follows:

1.      The NHDOC defendants manifested deliberate indifference to plaintiffs' health and safety, by causing them to be subjected to a substantial risk of serious harm, rendering those defendants liable under 42 U.S.C. § 1983, for violations of the Eighth Amendment, by:

>   a.      transferring Mr. Gibbs to the AHCC, far away from his family and friends, resulting in emotional harm and personal loss to Mr. Gibbs;
>
>   b.      failing to monitor the plaintiffs' statuses and respond to grievances, with regard to the failure of AHCC officers to provide Mr. Gibbs with appropriately-sized new shoes prior to December 2020, which Mr. Gibbs needed to replace shoes that were falling apart, ill-fitting, and unsuitable for cold weather, and which caused him pain and impaired his ability to walk;
>
>   c.      failing to monitor the plaintiffs' statuses and respond to grievances, with regard to the failure of AHCC health care providers to order an MRI or surgery to treat Mr. Gibbs's painful and debilitating herniated discs;
>
>   d.      failing to monitor the plaintiffs' statuses and respond to grievances, with regard to the failure of AHCC health care providers to repair the torn meniscus in Mr. Gibbs's knee, which had been diagnosed as requiring surgery;
>
>   e.      failing to monitor the plaintiffs' statuses and respond to grievances, with regard to the failure of AHCC dental care providers to deny plaintiffs dentures, tooth cleanings, and other dental care for the plaintiffs' tooth pain and bleeding;
>
>   f.      failing to monitor the plaintiffs' statuses and respond to grievances, with regard to the failure of AHCC health care providers to diagnose or treat Mr. Gibbs's painful lung condition, which he feared could be chronic obstructive pulmonary disease ("COPD"); and
>
>   g.      failing to monitor the plaintiffs' statuses and respond to grievances, with regard to the failure of AHCC health care providers to provide the plaintiffs with appropriate mental health treatment for their mental health conditions.

2.      The NHDOC defendants violated the plaintiffs' Fourteenth Amendment rights, rendering them liable under 42 U.S.C. § 1983, in that:

>   a.      they did not respond to the plaintiffs' grievances regarding the conditions at the AHCC, in violation of plaintiffs' due process and equal protection rights; and
>
>   b.      the AHCC failed to credit and debit Mr. Gibbs's inmate account in the same amounts that the NHDOC would have credited and debited the accounts of NHDOC inmates, in violation of Mr. Gibbs's right to equal protection.

    3.    The NHDOC defendants are liable for the conduct of AHCC agents to the extent that:

        a.    AHCC librarians did not permit the plaintiffs to file pleadings in this case electronically, in violation of their First and Fourteenth Amendment right of access to the courts; and

        b.    AHCC mailroom staff members, in September 2020, seized, opened, and did not deliver to Mr. Gibbs (for multiple weeks) a package containing a complaint or notice of intent to sue prepared by Mr. Gibbs, after that package had been returned to the AHCC from New Hampshire, in violation of Mr. Gibbs's:

            i.    right of access to the courts, and

            ii.    First Amendment rights.

    4.    Defendants NHDOC Assistant Commissioner Kench and/or NHDOC Medical and Forensic Services Director Mattis withheld information from NHDOC Commissioner Hanks relating to the conditions of Mr. Gibbs's confinement at the AHCC, rendering Assistant Commissioner Kench and/or Director Mattis liable for a conspiracy to violate Mr. Gibbs's civil rights under 42 U.S.C. §§ 1985 and 1986.

In February 2021, Ms. Sonia placed a set of motions and declarations (doc. Nnos. 4, 5, 6) into the prison mail system for filing in this case, which, in part, assert new claims and name the N.H. State Prison ("NHSP") Warden Michelle Edmark as a new defendant. Around the time those documents were filed, prison officials transferred Mr. Gibbs back to New Hampshire.[3] Given Mr. Gibbs's failure to sign many of the pleadings filed by Ms. Sonia, Mr. Gibbs's intent to continue to participate as a party in this case remains unclear.

For purposes of deciding the instant request for preliminary injunctive relief, the court summarizes the claims asserted in Doc. Nos. 4, 5, and 6, as follows:

---

[3] Neither plaintiff has filed a change of address notice in this case. The NHDOC Inmate Locator lists Mr. Gibbs as housed at the NHSP, and Ms. Sonia as housed in a "Non-NHDOC Facility." NHDOC Inmate Locator, https://business.nh.gov/Inmate_locator/ (last visited August 17, 2021). Mr. Gibbs appears to have been transferred out of the AHCC after January 10, 2021. See Doc. No. 5-1, at 60.

5. The NHDOC defendants and the NHSP Warden subjected plaintiffs to a substantial risk of serious harm, in violation of the Eighth Amendment, in that defendants failed to monitor the plaintiffs' welfare and failed to respond to the plaintiffs' grievances, when:

    a. AHCC officials placed Ms. Sonia (a vulnerable, transgender female inmate):

        i. in a cell with predatory male inmates, and

        ii. in isolation when she complained about inmate threats and sexual assaults;

    b. AHCC health care providers failed to provide Ms. Sonia with sexual reassignment surgery, mental health treatment, and other appropriate care for her gender dysphoria;

    c. AHCC policies exposed plaintiffs to a heightened risk of COVID-19 infection, given the plaintiffs' ages (over 50), Ms. Sonia's COPD, and Ms. Sonia's need for a nebulizer, resulting in Ms. Sonia's COVID-19 infection in December 2020;

    d. AHCC officials failed to provide Ms. Sonia with her nebulizer; and

    e. AHCC health care providers failed to provide Ms. Sonia with dental care she needed to prevent or treat tooth loss.

6. The NHDOC defendants and NHSP Warden are liable for AHCC prison officials' refusal to make certain rehabilitation programs, cell assignments, or services available to Ms. Sonia because of her transgender status, in violation of the Rehabilitation Act.

7. The NHDOC defendants and NHSP Warden are liable for adverse acts of the AHCC mailroom staff, taken in retaliation for plaintiffs' exercise of their First Amendment right to petition the government for the redress of grievances, in that the AHCC mailroom did not deliver a package to Mr. Gibbs containing a complaint or notice of intent to sue, which was sent back to him at the AHCC in September 2020.

8. The NHDOC defendants and NHSP Warden are liable for:

    a. subjecting plaintiffs to conditions of confinement at the AHCC violating federal laws regarding torture, elder abuse, and mail tampering; and

    b. arbitrary and capricious agency action, under the Administrative Procedures Act ("APA"), 5 U.S.C. § 706.

**Discussion**

I.      Deferral of Completion of Preliminary Review

In this court, the magistrate judge screens complaints filed by prisoners seeking relief against government employees, before directing that any defendant file an answer. See 28 U.S.C. § 1915A; LR 4.3(d)(1). This court, in ruling on the plaintiffs' motion for preliminary injunctive relief, takes no position as to whether any of the claims summarized herein should be served or dismissed for reasons set forth in 28 U.S.C. § 1915A and LR 4.3(d)(1). The magistrate judge is expected to complete her preliminary review of Claims 1-8, or issue another appropriate order, after plaintiffs have had an opportunity to respond to the August 9, 2021 Order (doc. no. 7) directing them to pay the filing fee or to file individual applications for in forma pauperis status in this case.

II.     Motion for Preliminary Injunction (Doc. No. 2)

   A.   Standard

"[T]he issuance of preliminary injunctive relief is 'an extraordinary and drastic remedy that is never awarded as of right.'" Harry v. Countrywide Home Loans, Inc., 215 F. Supp. 3d 183, 186 (D. Mass. 2016) (citations omitted), aff'd, 902 F.3d 16, 18 (1st Cir. 2018). "'A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" Glossip v. Gross, 576 U.S. 863, 876 (2015) (citation omitted).

Irreparable harm and likelihood of success are the factors that weigh most heavily in the analysis. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008); Shurtleff v. City of Bos.,

928 F.3d 166, 171 n.3 (1st Cir. 2019); Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011) ("'perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered'" (quoting 11A C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 2948, at 129 (2d ed. 1995))).

"To demonstrate likelihood of success on the merits, plaintiffs must show 'more than mere possibility' of success – rather, they must establish a 'strong likelihood' that they will ultimately prevail." Sindicato Puertorriqueño de Trabajadores, SEIU Local 1996 v. Fortuño, 699 F.3d 1, 10 (1st Cir. 2012) (per curiam) (citations omitted). "Irreparable harm most often exists where a party has no adequate remedy at law." Charlesbank Equity Fund II, Ltd. P'ship v. Blinds To Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004).

### B. Effect of Mr. Gibbs's Transfer

Where injunctive relief is sought, a prisoner's challenge to prison conditions or policies is generally rendered moot by his transfer. See Ford v. Bender, 768 F.3d 15, 29 (1st Cir. 2014) (after transfer or release, a prisoner "'no longer has a legally cognizable interest in a judicial decision on the merits of his claim'" for injunctive relief (citation omitted)). Mr. Gibbs's transfer to the NHSP has mooted his claims for prospective injunctive relief concerning the conditions of his confinement at the AHCC, specifically, Claims 1-3 and 5-8, as identified above, relating to his shoes, medical care, mental health care, dental care, and the conduct of AHCC staff in handling his inmate account, his incoming mail, and his access to the court. In addition, Mr. Gibbs's specific requests in the original complaint and motion for a preliminary injunction (doc. nos. 1, 2) that this court transfer him, alter the conditions of his confinement at the AHCC,

and control the conduct of AHCC employees, have been mooted by his transfer to New Hampshire. Put differently, he cannot demonstrate irreparable harm in the absence of injunctive relief, with respect to such claims. Accordingly, Mr. Gibbs's request for a preliminary injunction as to those matters is DENIED.

C.  Claims 2(a)-(b)

In Claim 2(a), plaintiffs assert violations of their Fourteenth Amendment procedural due process or equal protection rights, relating to the NHDOC defendants' alleged failure to respond to their grievances. "The courts of appeals that have confronted the issue are in agreement that the existence of a prison grievance procedure confers no liberty interest on a prisoner." Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (citing cases); accord Reichert v. Abbott, No. 19-1876, 2020 U.S. App. LEXIS 30354, at *1, 2020 WL 5588647, at *1 (1st Cir. June 8, 2020). A failure to process an inmate's grievances, without more, is not a violation of due process. See Freeman v. Dep't of Corr., 447 F. App'x 385, 387 (3d Cir. 2011) (as inmates "do not have a constitutional right to prison grievance procedures," prison officials' "alleged obstruction or misapplication of these procedures is not independently actionable").

The Fourteenth Amendment Equal Protection Clause dictates "that 'similarly situated persons are to receive substantially similar treatment from their government.'" Kuperman v. Wrenn, 645 F.3d 69, 77 (1st Cir. 2011) (citation omitted). To assert an equal protection claim, a plaintiff must state facts sufficient to show that, as compared to others similarly situated, the plaintiff was treated differently based on an improper consideration. See id. at 78. Plaintiffs fail to point to any similarly-situated inmates, housed in non-NHDOC facilities, whose grievances about non-NHDOC facilities have been treated differently by the NHDOC defendants, without a

legitimate ground for that difference. Accordingly, plaintiffs have failed to show a likelihood of success on the merits of Claim 2(a), and their motion for a preliminary injunction is DENIED to the extent it is based on Claim 2(a).

In Claim 2(b) plaintiffs claim a violation of the right to equal protection, in that Mr. Gibbs's inmate account was credited for less income and assessed for more charges at the AHCC than inmates in NHDOC facilities are credited or debited by the NHDOC. In general, however, an inmate transferred to another state pursuant to the ICC is considered similarly-situated to inmates in the receiving state for purposes of conducting an equal protection analysis. Daniels v. Thompson, No. CIV.A. 3:09-11-DCR, 2009 WL 960192, at *1, 2009 U.S. Dist. LEXIS 30420, at *3 (E.D. Ky. Apr. 7, 2009) (citing cases); see also Smith v. NHSP Warden, No. CIV. 05-CV-374-JD, 2006 WL 1425063, at *8 (D.N.H. Apr. 25, 2006) (New Hampshire inmate transferred out of state under ICC who was denied prison wages paid in New Hampshire facilities failed to state equal protection claim upon which relief can be granted), R&R approved, 2006 WL 1425063, at *1, 2006 U.S. Dist. LEXIS 30417 (D.N.H. May 17, 2006). Plaintiffs have failed to demonstrate that they have been treated differently than other AHCC inmates with respect to the handling of their inmate accounts. Accordingly, plaintiffs have failed to show a likelihood of success on the merits of Claim 2(b), and the motion for a preliminary injunction is DENIED to the extent it is based on Claim 2(b).

D.     Claims 3(a)-(b) and 7

In Claim 3(a), plaintiffs have asserted that AHCC librarians violated their right of access to the courts by failing to allow them to file electronically in this court. Plaintiffs have failed to demonstrate any likelihood of success on the merits of this claim, however, as the conduct

alleged in Claim 3(a) is not the cause of the plaintiffs' inability to file electronically in this court. This court's local rules do not generally allow any inmates to file electronically. See AP 2.1(d) ("In the absence of a court order authorizing electronic filing, all pro se litigants shall conventionally file and serve all documents . . . ."); AP 6.1(c) (authorizing "non-incarcerated" pro se parties to register as electronic filers). Furthermore, they have failed to allege facts suggesting that they have been actually injured in their ability to pursue a nonfrivolous claim, as is required to state a claim for denial of access to the courts. See Lewis v. Casey, 518 U.S. 343, 352, 354-55 (1996). Accordingly, the motion for a preliminary injunction is DENIED to the extent it is based on the matters alleged in Claim 3(a).

In Claim 3(b), plaintiffs have asserted that AHCC officials violated the plaintiffs' First Amendment right to receive legal mail and First Amendment right to petition for the redress of grievances, by failing to deliver a package to Mr. Gibbs in September 2020 that contained a notice of intent to sue and the complaint he had drafted. To state a claim upon which relief can be granted for interference with legal mail, an inmate must demonstrate that prison officials "'regularly and unjustifiably interfered with [his] incoming legal mail,'" or, if the incidents of tampering are few, inmates must provide specific allegations of invidious intent or actual harm, Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) (citations omitted). "Negligent interference with legal mail is not actionable under section 1983." Murphy v. Grenier, 406 F. App'x 972, 976 (6th Cir. 2011); Conway v. Jackson, No. 5:10CV00225 JLH-BD, 2010 WL 3547226, at *2, 2010 U.S. Dist. LEXIS 93100, at *4 (E.D. Ark. Aug. 16, 2010) (isolated incident of jail official opening inmate's legal mail outside of inmate's presence does not give rise to liability "without evidence of improper motive" or injury resulting), R&R adopted, 2010 WL 3547225, 2010 U.S. Dist. LEXIS 93010 (E.D. Ark. Sept. 7, 2010).

Plaintiffs have alleged that Mr. Gibbs received notice in September 2020 that someone at the AHCC had signed for receipt of a FedEx package addressed to him. He filed grievances in September 2020 complaining to AHCC officials that he had not received that package. When Mr. Gibbs inquired with the mailroom staff regarding the fate of that package, specifically noting that the package contained legal materials, the staff member who examined the FedEx tracking record notified Mr. Gibbs that the name of the individual alleged to have signed for the package ("RMORENO") did not match the name of any staff member at the AHCC. Documents filed as exhibits in this case state that when AHCC staff investigated the matter further in October 2020, officers found the package at issue in the mailroom. See Doc. No. 2, at 13. That investigation revealed that the exterior of that package had not been marked as "legal mail," as required by that facility's policies and procedures. See Doc. No. 2, at 13. It is unclear from the record whether Mr. Gibbs received that package after it was found, or whether he had retained a copy when he sent it; letters filed as exhibits in this case appear to be copies of one or more notices of intent to sue that Mr. Gibbs addressed to the NHDOC in 2020. See Doc. No. 6, at 55-61. In any event, plaintiffs do not offer any evidence or allegation of actual harm resulting from the delay.

Accepting plaintiffs' nonconclusory, nonspeculative allegations as true regarding the delivery of the FedEx package, the conduct of AHCC mailroom staff (or FedEx agents) in failing to deliver that package to Mr. Gibbs in September 2020 appears to have been an isolated incident that did not result in any harm, which could perhaps suggest negligence, but not any nefarious, purposeful, or knowing act of improper interference with incoming legal mail. The facts alleged with respect to Claim 3(b) fail to suggest that plaintiffs are likely to succeed on the merits of that claim. Accordingly, the motion for a preliminary injunction is DENIED to the extent it is based on the matters alleged in Claim 3(b).

In Claim 7, the plaintiffs further assert that the alleged mishandling of Mr. Gibbs's September 2020 package manifested an adverse act taken in retaliation for the plaintiffs' exercise of their First Amendment rights. To state an actionable claim of retaliation, a plaintiff must allege facts showing, among other things, that he or she has suffered non-de minimis adverse action at the hands of defendants, causally linked to an exercise of First Amendment rights. See Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011). An adverse act is more than de minimis if it "'would chill or silence a person of ordinary firmness from future First Amendment activities.'" Starr v. Dube, 334 F. App'x 341, 342 (1st Cir. 2009) (citation omitted). The conduct of officers in failing to deliver to Mr. Gibbs on one occasion a package containing materials he drafted, as to which he had retained a copy or received the original some weeks later, is not an adverse act that would chill an inmate of ordinary firmness from preparing and mailing such items in the first place. Accordingly, plaintiffs have failed to demonstrate a likelihood of success on the merits with respect to Claim 7, and the motion for a preliminary injunction is DENIED to the extent it is based on Claim 7.

E.  Claim 4

In Claim 4, plaintiffs have alleged that Assistant Commissioner Kench and/or Director Mattis withheld their grievances from Commissioner Hanks, rendering them liable for a civil rights conspiracy under 42 U.S.C. §§ 1985 and 1986.

> In order to state a cause of action arising under section 1985(3), a plaintiff must assert (a) racial or class-based discrimination; and (b) interference with a federally protected right. Additionally, a claim of conspiracy must allege facts that suggest a conspiracy rather than set out conclusory allegations that the defendants made an unlawful agreement.

Boyle v. Barnstable Police Dep't, 818 F. Supp. 2d 284, 318 (D. Mass. 2011). A conspiracy is:

> a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages.

Estate of Bennett v. Wainwright, 548 F.3d 155, 178 (1st Cir. 2008). Although "pro se complaints are to be read generously, allegations of conspiracy must nevertheless be supported by material facts, not merely conclusory statements." Slotnick v. Garfinkle, 632 F.2d 163, 165 (1st Cir. 1980) (per curiam) (citation omitted).

Plaintiffs' allegations regarding the defendants' handling of their grievances, or withholding of information from NHDOC Commissioner Hanks, neither suggest that any conspiracy existed to interfere with their rights, nor give rise to a claim of a conspiracy to discriminate against them because of their race or other protected class membership. "[A]bsent a showing of conspiracy, [the plaintiff] has no claim under § 1986, which extends liability to those who knowingly failed to prevent conspiracies under § 1985." Maymí v. P.R. Ports Auth., 515 F.3d 20, 31 (1st Cir. 2008) (citing 42 U.S.C. §§ 1985, 1986). Accordingly, plaintiffs have failed to demonstrate any likelihood of success on the merits of Claim 4, and for that reason, the motion for a preliminary injunction is DENIED to the extent it is based on Claim 4.

F.   Claim 8

Claim 8 summarizes plaintiffs' claims that New Hampshire prison officials subjected them to conditions violating federal criminal laws relating to elder abuse (34 U.S.C. § 12291), torture (18 U.S.C. § 2340), and criminal mishandling of their mail, and that defendants have engaged in arbitrary and capricious agency action, in violation of the APA, 5 U.S.C. § 706. The APA governs federal agency action, not the conduct of any state employees and officers named

as defendants.  See 5 U.S.C. § 701(b)(1) (defining agencies subject to APA).  The cited provisions regarding the definition of elder abuse appear in a federal statute that authorizes grants and embodies provisions relating to the prevention of violence against women; that statute does not provide plaintiffs with a cause of action pertinent to the issues here.  Cf. Malouf v. Benson, No. 17-10941-LTS, 2018 U.S. Dist. LEXIS 232207, at *6, 2018 WL 10155427, at *3 (D. Mass. Aug. 23, 2018) (neither definition of "child maltreatment" in 34 U.S.C. § 12291, nor Violence Against Women Act, creates private right of action).  Furthermore, plaintiffs' citations to federal criminal laws relating to torture and mail tampering also fail to provide a basis for obtaining a preliminary injunction here, as plaintiffs lack standing to bring claims of criminal misconduct in this civil case.  See In re Compact Disc Minimum Advert'd Price Antitr. Litig., 456 F. Supp. 2d 131, 145 (D. Me. 2006) ("Private citizens 'lack[] a judicially cognizable interest in the prosecution or nonprosecution of another.'" (quoting Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973))).

None of the authorities cited in Claim 8 provide plaintiffs with causes of action or claims upon which there is any likelihood that they will succeed on the merits.  Accordingly, the plaintiffs' request for a preliminary injunction is DENIED to the extent it is based on Claim 8.

G.     Remaining Injunctive Relief Claims

Mr. Gibbs's transfer has not mooted Ms. Sonia's claims arising under the Rehabilitation Act and her Eighth Amendment claims relating to her own dental care, medical care, and mental health care needs.  But the injunctive relief the plaintiffs requested in their motion for a preliminary injunction (protection from retaliation and mail tampering, access to electronic filing, and delivery of withheld mail), is neither premised upon nor targeted to redress those

claims. Therefore, with respect to Ms. Sonia's remaining injunctive relief claims, the motion for a preliminary injunction is DENIED, without prejudice to Ms. Sonia's ability to file a new motion seeking such relief, based on and designed to redress her own claims relating to the current conditions of her confinement.

## Conclusion

For the foregoing reasons, the plaintiffs' motion for a preliminary injunction (doc. no. 2) is DENIED in its entirety as to Mr. Gibbs and is DENIED as to Ms. Sonia, without prejudice to Ms. Sonia's ability to file a new motion seeking appropriate relief, arising from and designed to redress her own claims concerning the current conditions of her confinement.

SO ORDERED.

_____
Landya B. McCafferty
United States District Judge

August 25, 2021

cc: Peter E. Gibbs, Jr., pro se
     Brett (Brooke) Sonia, pro se